# EXHIBIT A

District Court, __Pueblo_____County, Colorado
Court Address:

501 N. Elizabeth Street, Pueblo, CO 81003

Plaintiff  DENISE M. GURULE

v.

Defendant  SHORT ELLIOTT HENDRICKSON INC.

DATE FILED: December 4, 2020 3:37 AM
FILING ID: F071AC16611D6
CASE NUMBER: 2020CV30522

▲   **COURT USE ONLY**   ▲

Case Number:

Division:          Courtroom:

## DISTRICT COURT CIVIL SUMMONS

**TO THE ABOVE NAMED DEFENDANT:** SHORT ELLIOTT HENDRICKSON INC.

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: __12/03/2020_____

Gary M. Kramer_____
Plaintiff's Attorney

_/s/ _____
Signature of Plaintiff's Attorney

1465 Kelly Johnson Blvd, Suite 210
Colorado Springs, CO 80920
_____
Address of Plaintiff's Attorney

(719) 694-2783_____
Plaintiff's Attorney's Phone Number

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

JDF 600  R10-13   DISTRICT COURT CIVIL SUMMONS

| | |
|---|---|
| District Court, Pueblo County, Colorado<br>Court Address: 501 N. Elizabeth Street<br>Pueblo, CO 81003 | DATE FILED: December 4, 2020 3:37 AM<br>FILING ID: F071AC16611D6<br>CASE NUMBER: 2020CV30522 |
| Plaintiff:<br>DENISE M. GURULE, an individual<br><br>v.<br><br>Defendant:<br>SHORT ELLIOTT HENDRICKSON INC.,<br>a Minnesota corporation. | COURT USE ONLY |
| Attorney for Plaintiff:<br>Gary M. Kramer, #41017<br>Gary Kramer Law, LLC<br>1465 Kelly Johnson Blvd, Suite 210<br>Colorado Springs, CO 80920<br>Phone: (719) 694-2783<br>Fax: (719) 452-3622<br>gary@garykramerlaw.com | ▲<br><br>Case Number:<br>Division:<br>Courtroom: |
| **COMPLAINT** | |

Plaintiff Denise Gurule ("Ms. Gurule"), through undersigned counsel, hereby complains as follows:

## **NATURE OF THE ACTION**

1. Defendant Short Elliott Hendrickson Inc. ("SEH") employed Ms. Gurule..

2. SEH fired Ms. Gurule because of her "likes", comments, and posts on her social media account on LinkedIn.

3. Ms. Gurule asserts claims that SEH violated her rights under the Colorado Lawful Off-Duty Activities Statute (LODAS), and the Colorado Political Activities Statute (CPAS). She also asserts a claim that she was terminated in violation of public policy.

4.      Ms. Gurule has also contemporaneously filed an administrative Charge of

Discrimination with the Colorado Civil Rights Division (CCRD), in which she has alleged

that SEH discriminated against her based on her gender, religion, and creed, in

violation of the Colorado Anti-Discrimination Act. Ms. Gurule will seek leave to amend

her complaint to add that claim upon the completion of the administrative process

required for the charge, and her receipt of a Notice of Right to Sue from CCRD.

### JURISDICTION AND VENUE

5.      All of Defendant's acts and actions complained of in this Complaint were

committed in Pueblo County, Colorado.

6.      Venue is proper in this Court pursuant to C.R.C.P. 98.

### THE PARTIES

7.      Plaintiff Denise Gurule is a 58-year old woman who resides in Pueblo.

8.      Defendant SEH is a Minnesota corporation, with its main offices in St. Paul,

Minnesota.

9.      According to its website, SEH "is an employee-owned company of engineers,

architects, planners, and scientists serving public and private sector clients . . . ;" and

says its "700 employee-owners share a common goal: Building a Better World for All of

Us.®"

### STATEMENT OF FACTS

10.     SEH employed Ms. Gurule for over 16 years, from May 2004 until

September 28, 2020. Her first six months of employment were through a temporary

staffing agency, following which SEH hired her as a permanent employee starting on November 1, 2004.

11.     Ms. Gurule worked as a Senior Administrative Assistant in SEH's office in Pueblo.

12.     SEH paid Ms. Gurule $24.93 per hour. She worked 35 hours per week. In addition, SEH provided Ms. Gurule with employee benefits including health, dental, and vision insurance, and participation in a 401k retirement savings plan.

13.     As a Senior Administrative Assistant for SEH, Ms. Gurule's job duties included supporting the engineering and other administrative staff of the office by managing various administrative, word processing, and clerical duties and processes.

14.     Ms. Gurule did not directly supervise any other employees.

15.     Ms. Gurule's job duties did not involve any sales or marketing activity related to SEH clients, potential clients, or partners.

16.     At all times relevant to this Complaint, Ms. Gurule reported to and was directly supervised by Charles R. Gustafson, PE.

17.     Mr. Gustafson is a Principal with SEH, and is the Construction Practice Center Lead for the company's Western Region. Mr. Gustafson is the company's senior manager in its Pueblo office.

18.     At all times during her employment, Ms. Gurule performed her job duties diligently and professionally, She received positive reviews of her job performance.

19.     During her employment, Ms. Gurule never received any disciplinary or adverse employment action concerning her conduct or compliance with company policies.

20.     At all times relevant to this Complaint, Ms. Gurule worked remotely from her home, due to the COVID-19 pandemic and SEH's corresponding reductions of its in-person workforce pursuant to the applicable Colorado public health orders.

***Ms. Gurule's LinkedIn Account and Social Media Activity***

21.     At some time during her employment at SEH, and at least several years before 2020, Ms. Gurule created a personal account on the social media platform LinkedIn.

22.     Ms. Gurule's personal LinkedIn account included information about her education, work experience, and current employment – including her job title at SEH.

23.     On her personal LinkedIn account, Ms. Gurule communicated content, i.e. posts, comments, "likes", etc., related to news, commentary, opinion, and related materials concerning political and social subjects. Ms. Gurule engaged in this social media activity regularly, for years, throughout the period of her employment.

24.     Ms. Gurule actively observes and participates in her Christian faith.

25.     Ms. Gurule holds what are commonly understood in American society as conservative political and social views.

26.     Ms. Gurule is a registered Republican voter in Colorado.

27.     In the period and events leading up to the recent 2020 Presidential election, Ms. Gurule supported President Trump's candidacy.

28.     Ms. Gurule and Mr. Gustafson were "connected" to each other on LinkedIn.

29.     "Connected" on LinkedIn means that Ms. Gurule and Mr. Gustafson were "first-level connections", i.e. one had requested to connect with the other, who accepted.

30.     Individuals who are first-level connections on LinkedIn are able to view each other's social media content and activity, depending on their individual preferences and settings on the platform, and what each person chooses to post or share.

31.     As a first-level connection of Ms. Gurule on LinkedIn, Mr. Gustafson could view her activity on that platform, including her comments (if any), posts, "likes", etc.

32.     Ms. Gurule was also first-level connected on LinkedIn with: David Ott, SEH's Chief Executive Officer; Paul Wells, Vice President and Principal for SEH's Western Region; and at least 50 other employees of the company, including many other Principals and other senior managers.

33.     Individuals who are not first-level connections with each other on LinkedIn, but who share a common first-level connection with a third person, are called "second-level connections".

34.     Second-level connections may view another person's social media content and activity on LinkedIn, if the other person has publicly shared that activity and has not otherwise restricted it specifically to first-level connections. However, in order to do so, such an individual must intentionally navigate to and view the other person's profile.

35.     Based on the type of her membership and account on LinkedIn, Ms. Gurule could determine the identity of other individuals who viewed her profile, the date such "views" occurred, and whether such other individuals were first- or second-level connections.

36.     Upon information and belief, Mr. Gustafson regularly viewed Ms. Gurule's social media activity on LinkedIn, during all times relevant to this Complaint.

37.    If a first-level connection no longer wishes to see the social media activity of the person to whom they are connected on LinkedIn, they need only remove them as a connection.

### *The Company's Social Media Policy and Core Values*

38.    In its Employee Handbook, SEH has a policy concerning "Social Networking and Online Media" (hereinafter, the "Social Media Policy"). During the times relevant to this case, the most recent version of that handbook, and that policy, was March 2020.

39.    The Social Media Policy encourages employees "to build an online brand as a thought leader and to share the Company's posts and blogs within their networks."

40.    The Social Media Policy provides that "Employees posting about our Company on social sites are responsible for protecting and enhancing the SEH brand. Avoid responding when you see posts or commentary related to SEH that require subject matter expertise, impact the Company's reputation or the Company's financial performance."

41.    The Social Media Policy further provides that "Employees are encouraged to develop relationships with clients and partners in the digital space/social media and traditional settings. The same principles which apply to professional conduct in traditional settings also apply to online settings."

42.    The Social Media Policy further provides that "SEH has no general practice of reviewing employee's personal or professional profiles on social media sites. However, employees are to be aware that if such profiles contain information suggesting conduct that violates any SEH policy or does not adhere to Company values, such information

may form the basis for an investigation and disciplinary action up to and including termination."

43.     The Social Media Policy does not require or encourage SEH employees to participate in any online social media activity, or to connect with each other on LinkedIn or any other platform.

44.     The employee handbook also contains a statement of SEH's "Core Values":

- **Honesty and Integrity:** We speak and act with honesty and integrity with one another, our clients and the public.

- **Respect:** We treat one another, our clients and the public with respect. We think the best of one another. We value others and their opinions.

- **Service:** Our business is meeting the needs of others. We will meet those needs on schedule and create lasting, sustainable value for our clients.

- **Accountability:** We take responsibility for our words and actions. Our words and actions will help SEH to succeed.

### *July 2, 2020: 1ˢᵗ "Warning" Re: Ms. Gurule's LinkedIn Social Media Activity*

45.     On July 2, 2020, Mr. Gustafson had a telephone meeting with Ms. Gurule to discuss certain recent entries she had made on her personal LinkedIn account.

46.     Mr. Gustafson told Ms. Gurule that "a concern had been raised to HR by an employee" regarding Ms. Gurule's social media activity on LinkedIn.

47.     Mr. Gustafson told Ms. Gurule that the company had not looked into her LinkedIn activity until the employee raised this concern and brought it to HR's attention.

48.     Mr. Gustafson did not identify the employee who allegedly expressed concern about Ms. Gurule's social media activity. He did not tell her whether this person was another employee in the Pueblo office, or some other location of the company.

49.     Before the unnamed employee allegedly complained to HR, Mr. Gustafson never communicated any concern to Ms. Gurule about her social media activity.

50.     At no time during her employment did any employee of SEH other than Mr. Gustafson communicate any concern to Ms. Gurule about her social media activity.

51.     At no time prior to July 2, 2020, did any SEH employee other than Mr. Gustafson communicate any concern to Ms. Gurule about her social media activity.

52.     No one has ever complained to LinkedIn about any aspect of Ms. Gurule's social media activity on that platform.

53.     During the meeting on July 2, 2020, Mr. Gustafson identified several of Ms. Gurule's recent "likes", comments, and posts on her LinkedIn account.

54.     Mr. Gustafson told Ms. Gurule that "the subject posts, 'likes', comments, etc., were contrary to SEH Employee Handbook and SEH expectations" regarding the Social Media Policy.

55.     Mr. Gustafson recommended that Ms. Gurule review the Social Media Policy.

56.     Mr. Gustafson required Ms. Gurule to "remove posts, including comments and 'likes', of subjects that are non-inclusive, and/or disrespectful of others/groups".

57.     Mr. Gustafson required Ms. Gurule to report to him when she had completed the removal of the subject items from her personal LinkedIn account by July 6, 2020.

58.     Mr. Gustafson told Ms. Gurule that he "could send her examples of some of the concerning information".

59.     Mr. Gustafson did not explain to Ms. Gurule how any or each such "concerning" item was allegedly contrary to company policy.

60.     Mr. Gustafson did not explain to Ms. Gurule how any or each such "concerning" item was about a subject that was "non-inclusive, and/or disrespectful of others/groups".

61.     Neither the Social Media Policy nor the Core Values of the company mention the word "inclusive".

62.     Mr. Gustafson told Ms. Gurule that he and HR would be available if she had any questions, including "how to remove the subject material".

63.     Mr. Gustafson told Ms. Gurule that he would send her an email containing his notes and "recap" of their discussion, and that a copy of that email would be placed in her employee file.

64.     Before the meeting and email from Mr. Gustafson on July 2, 2020, three persons who were first-level connections of Ms. Gurule, and who were employees of SEH, viewed her profile on LinkedIn: Jackie Zamorano - Chief People Officer, Sandee Schultz - Director Recruitment, and Dawn Williams - Corporate Communications Director. All three work at the SEH corporate headquarters office in St. Paul, MN.

65.     Following the July 2, 2020, meeting and email from Mr. Gustafson, Ms. Gurule blocked each of the above three individuals from viewing her LinkedIn profile and social media activity.

66.     After their meeting, on July 2, 2020, Mr. Gustafson sent Ms. Gurule an email regarding their discussion. He included and attached "some sample screen shots of the subject 'likes', comments, posts and all subject entries [that] need to be addressed by end of business Monday, July 6, 2020".

67.     The "sample screen shots" sent by Mr. Gustafson to Ms. Gurule on July 2, 2020, are attached to this Complaint as **Exhibit 1.**

68.     Mr. Gustafson's July 2, 2020, email does not explain how he, or anyone else at the company, believed that any of the ten (10) items depicted in **Exhibit 1** was allegedly contrary to company policy.

69.     None of the items depicted in **Exhibit 1** expresses any statement or opinion of Ms. Gurule that can reasonably be interpreted as a statement or opinion of SEH, or on behalf of SEH. To the contrary, they are obviously Ms. Gurule's personal views.

70.     Eight (8) of the ten (10) items depicted in **Exhibit 1** concern politics, i.e. matters and subjects of current social and political controversy in the United States, such as conflict between the rights of homosexual persons and some citizens' religious beliefs, the Black Lives Matter movement, immigration, the Trump administration's response to the COVID-19 pandemic, rebranding and relabeling of various consumer products because of purportedly racist depictions, former President Obama, and the actions of "Antifa" protestors. The remaining two (2) items consisted of a facetious video involving comedian and actor Steve Martin, and nostalgia for an old form of beer cans.

71.     Like Ms. Gurule, Mr. Gustafson is a registered Republican voter in Colorado.

72.     Mr. Gustafson copied Tawnia Pleski on his email to Ms. Gurule.

73.     Ms. Pleski is a Senior Human Resources Professional for SEH, at its corporate headquarters office in St. Paul, MN.

74.     Upon information and belief, Ms. Pleski, Ms. Schultz, and/or Ms. Zamorano advised and directed Mr. Gustafson that he was required to take action against Ms. Gurule because of her social media activity.

75.     Upon information and belief, absent the advice and direction he received from Ms. Pleski, Ms. Schultz, and/or Ms. Zamorano, Mr. Gustafson would not have taken action against Ms. Gurule because of her social media activity.

76.     In response to Mr. Gustafson's direction to delete each of the identified items from her LinkedIn account, Ms. Gurule expressed that she did not understand what was wrong with any of those items. Ms. Gurule told Mr. Gustafson that this was about the "left silencing the right". She also told him that she thought there was no freedom of speech at SEH, and that the action amounted to unlawful censorship of her private, personal political views. Mr. Gustafson agreed with her.

77.     Nevertheless, Ms. Gurule complied with Mr. Gustafson's direction, and emailed him that she had done so on or before July 6, 2020.

### *August 19, 2020: 2nd "Warning" Re: Ms. Gurule's LinkedIn Social Media Activity*

78.     Prior to August 19, 2020, Ms. Pleski viewed Ms. Gurule's profile on LinkedIn.

79.     On August 19, 2020, Mr. Gustafson had a second meeting with Ms. Gurule regarding her LinkedIn activity. This time, the meeting included Ms. Pleski. The meeting was conducted via video-teleconference.

80.     Mr. Gustafson and Ms. Pleski told Ms. Gurule that "a concern came up again" regarding Ms. Gurule's LinkedIn activity.

81.     Mr. Gustafson stated to Ms. Gurule that during their previous meeting on July 2, 2020, he had discussed examples of her LinkedIn activity "that fell outside of SEH Core Values of Respect and Inclusion".

82.     The word "Inclusion" does not appear in the SEH Core Values, nor is it mentioned anywhere in the Social Media Policy.

83.     Mr. Gustafson and Ms. Pleski told Ms. Gurule that the company had not looked into her LinkedIn activity after July 6, 2020, when she had complied with the previous direction to remove the items in **Exhibit 1**.

84.     Mr. Gustafson and Ms. Pleski told Ms. Gurule that "HR was recently informed by a different employee of concerns" regarding her LinkedIn social media activity.

85.     Mr. Gustafson and Ms. Pleski did not identify the second employee who allegedly expressed concern about Ms. Gurule's social media activity. They did not tell her whether this person was another employee in the Pueblo office, or some other location of the company.

86.     Mr. Gustafson and Ms. Pleski alleged that there were "new posts that go against SEH Core Values of Respect, Inclusion, and now Accountability (since this is the second time these expectations are being discussed with you" and "discussed how they go against Core Values and are not professional".

87.     Mr. Gustafson and Ms. Pleski stated that they explained to Ms. Gurule "We further explained respect, inclusion, diversity and what the difference is with SEH's expectations of being respectful of others ideas and opinions but that such statements cannot be expressed in a way that is disrespectful or non-inclusive."

88.    The word "diversity" does not appear in the SEH Core Values, nor is it mentioned anywhere in the Social Media Policy.

89.    Mr. Gustafson and Ms. Pleski further stated that they "discussed that "liking" or "commenting" on posts is the same as posting it and could be perceived as acceptance or promotion by [Ms. Gurule] and/or SEH of posts of disrespectful, non-inclusive or disparaging remarks."

90.    Mr. Gustafson and Ms. Pleski reviewed "a sampling of your concerning posts to confirm your understanding of why they are of concern". Ms. Pleski provided the "sampling" to Mr. Gustafson, who in turn displayed them to Ms. Gurule.

91.    After the meeting, Mr. Gustafson emailed a copy of those five (5) additional items. A copy of those items is attached to this Complaint as **Exhibit 2.**

92.    Mr. Gustafson copied Ms. Pleski on the email, as well as his boss, Paul Wells, Western Region Vice President.

93.    Mr. Gustafson and Ms. Pleski also told Ms. Gurule that the timing of some of her posts on LinkedIn suggested that they might have occurred during work hours.

94.    Mr. Gustafson and Ms. Pleski directed Ms. Gurule "to remove all posts, likes, and comments that go against SEH Core Values by Friday, 8/21/20 end of day, and to email them to confirm once she had done so.

95.    Mr. Gustafson and Ms. Pleski also prohibited Ms. Gurule from taking action to block SEH HR staff from viewing her LinkedIn profile.

96.    Mr. Gustafson and Ms. Pleski also told Ms. Gurule that if she was unsure of what the company viewed as "acceptable" to post on her LinkedIn account, she was required

to contact HR staff (Ms. Pleski, Ms. Schultz, or Ms. Zamorano), or the Director of Marketing Communications for guidance before proceeding.

97.     Mr. Gustafson and Ms. Pleski also told Ms. Gurule that it "may be helpful" for her to attend the next session(s) of the "SEH Diversity, Inclusion & Equality Conversation".

98.     SEH describes these regularly scheduled events as "an open and honest conversation" which provides an opportunity for all employees "to seek to understand new perspectives, or to have your voice heard."

99.     Ms. Gurule attended the next scheduled session of the SEH Diversity, Inclusion & Equality Conversation on August 20, 2020. Ms. Pleski was one of the participants.

100.    Upon information and belief, Ms. Pleski, Ms. Schultz, and/or Ms. Zamorano again advised and directed Mr. Gustafson that he was required to take the second adverse action against Ms. Gurule because of her social media activity.

101.    Upon information and belief, absent the advice and direction he received from Ms. Pleski, Ms. Schultz, and/or Ms. Zamorano, Mr. Gustafson would not have taken the second adverse action against Ms. Gurule because of her social media activity.

102.    None of the items depicted in **Exhibit 2** expresses any statement or opinion of Ms. Gurule that can reasonably be interpreted as a statement or opinion of SEH, or on behalf of SEH. To the contrary, they are obviously Ms. Gurule's personal views.

103.    Each of the items depicted in **Exhibit 2** concern politics, i.e. matters and subjects of current social and political controversy in the United States, such as the Black Lives Matter movement, and the then-pending campaign of the Democratic nominees for President and Vice President, Joe Biden and Kamala Harris.

-14-

104.    Ms. Gurule objected to Mr. Gustafson's and Ms. Pleski's direction to delete each of the items in **Exhibit 2** from her LinkedIn account. She again expressed that she did not believe she had violated any company policy, and that the action amounted to unlawful censorship of her private, personal political views.

*105.*    Nevertheless, Ms. Gurule complied with the company's direction to remove the items discussed with her during the second meeting.

### *One of the items cited for Ms. Gurule's 2nd warning was posted by a male SEH employee – who was not reprimanded or required to delete it.*

106.    Regarding the second item depicted in **Exhibit 2**, Ms. Gurule liked another person's comment about a third-level connection's original post. The comment stated "I'm not big on liberal leaders such as her" (in reference to Senator and candidate for Vice President Kamala Harris).

107.    On the screenshot of the item that SEH provided to Ms. Gurule in **Exhibit 2**, the company had redacted the name of the other person who made the comment.

108.    That other person who posted the comment that Ms. Gurule "liked" is an SEH employee and former co-worker of Ms. Gurule named Donald Herman.

109.    Mr. Herman is employed by SEH as a Lead Resident Project representative in the Pueblo office.

110.    At all relevant times, Mr. Herman was a first-level connection with Ms. Gurule on LinkedIn.

111.    Mr. Herman's LinkedIn profile includes his job title with SEH.

112.    On his LinkedIn profile, Mr. Herman lists "Donald J. Trump for President" as among his interests.

113.    Ms. Pleski called Mr. Herman and discussed with him his comment on the LinkedIn post.

114.    However, upon information and belief, SEH did not issue Mr. Herman any written warning regarding his comment on the LinkedIn post, and it did not review any other aspects of Mr. Herman's social media activity, on LinkedIn or any other platform.

115.    Upon information and belief, SEH did not direct Mr. Herman to delete his comment on the LinkedIn post, or to remove any other items of his social media activity on LinkedIn.

### *September 28, 2020: SEH Terminates Ms. Gurule's Employment*

116.    On September 28, 2020, Mr. Gustafson and Ms. Pleski met with Ms. Gurule for the final time. Mr. Gustafson summoned Ms. Gurule to meet with him in person at the Pueblo office. Ms. Pleski participated by phone.

117.    Mr. Gustafson and Ms. Pleski informed Ms. Gurule that her employment was terminated because someone (who they did not identify) had again complained to them about her social media activity on LinkedIn.

118.    Ms. Gurule twice asked Mr. Gustafson and Ms. Pleski to identify what item(s) she allegedly posted on LinkedIn that were now the subject of an apparent third complaint by an employee. They refused to provide a response to her requests.

119.    After the termination meeting, Mr. Gustafson told Ms. Gurule that he had tried to fight with HR on her behalf, but they said no.

120.    Upon information and belief, Ms. Pleski, Ms. Schultz, and/or Ms. Zamorano again advised and directed Mr. Gustafson that he was required to take the third

adverse action against Ms. Gurule and terminate her employment because of her social media activity.

121.    Upon information and belief, absent the direction of Ms. Pleski, Ms. Schultz, and/or Ms. Zamorano, Mr. Gustafson would not have imposed the third adverse action against Ms. Gurule and would not have terminated her employment because of her social media activity.

122.    Later that day, Ms. Gurule asked Mr. Gustafson to send her copies of his previous emails to her from the first and second warnings, July 2 and August 19, 2020 respectively. Mr. Gustafson replied that she would have to contact HR.

123.    Ms. Gurule then emailed Ms. Pleski, and requested that Ms. Pleski send her copies of "the LinkedIn PDFs". By that, Ms. Gurule was referring to **Exhibits 1 and 2**.

124.    Ms. Pleski did not send Ms. Gurule what she had asked for. Instead, on September 29, 2020, Ms. Pleski sent an email to Ms. Gurule with an attached file that provided what her message described as "a sample of postings from your LinkedIn profile taken during the week of 9/22/20. At that time, we did not review your entire profile or attempt to copy all posts that were of concern."

125.    Thus, Ms. Pleski provided at least a partial answer to the question that Ms. Gurule asked the day before during the termination meeting, i.e. which of her LinkedIn posts did the company allege were "of concern".

126.    The file attached to Ms. Pleski's September 29 email to Ms. Gurule was named "GuruleD_20200922_LinkedIN_SamplePosts". A copy is attached to this Complaint as **Exhibit 3.**

127.   When Ms. Gurule examined **Exhibit 3**, she examined the file's digital properties, which indicated that it was created on September 29, 2020, at 1:33 p.m.

128.   Ms. Gurule then emailed Ms. Pleski again, and asked her to send the two previous LinkedIn PDFs she had originally requested. Ms. Pleski provided them.

129.   **Exhibit 3** contains six (6) items that were copied from Ms. Gurule's LinkedIn account. None of the items depicted in **Exhibit 3** expresses any statement or opinion of Ms. Gurule that can reasonably be interpreted as a statement or opinion of SEH, or on behalf of SEH. To the contrary, they are obviously Ms. Gurule's personal views.

130.   Each of the items depicted in **Exhibit 3** concern politics, i.e. matters and subjects of current social and political controversy in the United States. They include: the candidacy of Joe Biden; the perceived obsession with race and alleged racism by liberal and/or left-wing politicians and activists; social conditions in the California district represented by Speaker of the House of Representatives, Democratic Congresswoman Nancy Pelosi; a comparison between kneeling football players at an NFL game during the playing of the national anthem and saluting soldiers in uniform; and criticism of a social media comment – apparently made by a human resources manager at another company in the Minneapolis/St. Paul area – expressing a desire to "literally burn alive" a child who was wearing a "Trump 2020" mask at school.

### *SEH never disciplined a higher-ranked male employee with similar activity.*

131.   Daniel "Dan" Botich is an Associate & Eastern Region Practice Leader, and Senior Economic Development Professional for SEH. He works in the company's offices in Munster, Indiana.

132.    Upon information and belief, Mr. Botich supervises one or more other employees.

133.    Upon information and belief, Mr. Botich's job duties involve direct interface with SEH's customers and potential customers.

134.    Mr. Botich has a LinkedIn profile on which he actively posts and participates on a wide range of issues and interests – including politics.

135.    Mr. Botich is a Republican who, like Ms. Gurule, supported President Trump's candidacy for re-election.

136.    During approximately the same period of time, Mr. Botich regularly posted and "liked" numerous items and comments on LinkedIn about the identical or very similar subjects that are depicted in **Exhibits 1, 2, and 3**.

137.    Mr. Botich "liked" Ms. Gurule's post about the kneeling football players and the saluting soldiers.

138.    Mr. Botich "liked" a comment Ms. Gurule posted in response to an article critical of Kamala Harris' political views about gun ownership, in response to which Ms. Gurule commented "She is evil!".

139.    Mr. Botich "liked" or commented about subjects involving: race relations; Joe Biden's candidacy; violent protests and riots associated with Black Lives Matter and "Antifa" groups; Kamala Harris' political views and record; Democratic officials' governance of major U.S. cities; support for law enforcement; and "political correctness".

140.   SEH never warned or disciplined Mr. Botich regarding any of his social media activity on LinkedIn.

### FIRST CAUSE OF ACTION – LAWFUL OFF-DUTY ACTIVITIES STATUTE

141.   Ms. Gurule incorporates all preceding paragraphs.

142.   The Colorado Lawful Off-Duty Activities Statute prohibits an employer from terminating an employee due that employee's engaging in any lawful activity off the employer's premises during nonworking hours. C.R.S. § 24-34-402.5(1).

143.   SEH is an employer in Colorado required to comply with the statute.

144.   Ms. Gurule's social media activity on LinkedIn was lawful.

145.   Ms. Gurule's social media activity, contained in Exhibits 1, 2, and 3, was lawful.

146.   Ms. Gurule's social media activity, contained in Exhibits 1, 2, and 3, was conducted during nonworking hours.

147.   Ms. Gurule's social media activity, contained in Exhibits 1, 2, and 3, did not relate to any bona fide occupational qualification of her employment with SEH.

148.   Ms. Gurule's social media activity, contained in Exhibits 1, 2, and 3, did not relate to any of her on-the-job activities.

149.   Ms. Gurule's social media activity, contained in Exhibits 1, 2, and 3, did not create any actual or apparent conflict of interest with her job responsibilities to SEH.

150.   SEH terminated Ms. Gurule's employment because of her lawful social media activity on LinkedIn.

151.   SEH thereby violated Ms. Gurule's rights under the statute.

152.    The statute authorizes Ms. Gurule to bring this civil action for damages. C.R.S. § 24-34-402.5(2)(a).

153.    Ms. Gurule suffered substantial damages caused by SEH's violation of her rights under the statute, in an amount to be proven at trial.

### SECOND CAUSE OF ACTION – POLITICAL ACTIVITIES STATUTE

154.    Ms. Gurule incorporates all preceding paragraphs.

155.    The Colorado Political Activities Statute (CPAS) provides that it is unlawful for an employer in Colorado to make, adopt, or enforce any rule, regulation, or policy forbidding or preventing any of its employees from engaging or participating in politics. C.R.S. § 8-2-108(1).

156.    SEH is an employer in Colorado required to comply with the statute.

157.    Each of the items of Ms. Gurule's social media activity on LinkedIn, contained in Exhibits 1, 2, and 3, concerned a subject or issue of current political interest or controversy in the United States, in Colorado, and in Ms. Gurule's community.

158.    Through her social media activity on LinkedIn, contained in Exhibits 1, 2, and 3, Ms. Gurule engaged and participated in politics.

159.    SEH terminated Ms. Gurule's employment because she engaged and participated in politics.

160.    The statute authorizes Ms. Gurule to bring this civil action for damages. C.R.S. 8-2-108(2).

161.    Ms. Gurule suffered substantial damages caused by SEH's violation of her rights under the statute, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION – WRONGFUL DISCHARGE
### IN VIOLATION OF PUBLIC POLICY

162.   Ms. Gurule incorporates all preceding paragraphs.

163.   In addition to providing the right of the employee to bring a civil action for damages, violation of the Colorado Political Activities Statute constitutes a misdemeanor for which the employer may be fined up to $2,000 and/or imprisoned for up to one year. C.R.S. § 8-2-108(1).

164.   Colorado law also prohibits an employer from terminating an employee because she belongs to any lawful political party, or because of her connection with that political party. C.R.S. 8-2-102. An employer who violates this law is guilty of a misdemeanor. C.R.S. § 8-2-103.

165.   The above-referenced statutes establish a clear public policy in Colorado against an employer's unlawful restriction or interference with an employee's political activity. In effect, they establish the private right of free speech for employees of private employers, analogous to and co-extensive with the rights of free speech of employees of governmental entities and other public employers under the First Amendment to the U.S. Constitution, and Section 10 of the Colorado Constitution.

166.   Colorado law also prohibits employers from requiring access to an employee's personal social media account(s), or requiring, requesting, suggesting, or causing an employee to change private settings associated with a social networking account – in order to review the contents therein. C.R.S. § 8-2-127(2)(a).

167.    The social media access statute expresses and establishes a clear public policy in Colorado against an employer's unlawful action(s) based on an employee's private conduct on their personal social media account.

168.    During the course of her employment with SEH, Ms. Gurule's social media activity on LinkedIn, contained in Exhibits 1, 2, and 3, constituted an exercise of private free speech, political activity, and to engage in private social media – all rights recognized as matters of clearly expressed public policy in Colorado.

169.    Ms. Gurule's LinkedIn activity did not violate SEH's Social Media Policy, or the company's Core Values.

170.    SEH was aware or reasonably should have been aware that Colorado law, as a matter of public policy, recognizes Ms. Gurule's rights of private free speech, political activity, and to engage in private social media.

171.    SEH was aware or reasonably should have been aware that Ms. Gurule reasonably believed that, in her social media activity on LinkedIn, she was exercising her rights of private free speech, political activity, and to engage in private social media, as recognized under Colorado law as a matter of public policy.

172.    SEH terminated Ms. Gurule's employment because of her exercise of her rights under Colorado law as matter of public policy.

173.    SEH thereby wrongfully terminated Ms. Gurule's employment in violation of public policy.

174.    Ms. Gurule thereby suffered damages caused by SEH's wrongful termination of her employment, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Gurule requests that this Court grant her the following relief:

a.      Back pay in the amount of compensation she would have earned but for SEH's termination of her employment;

b.      Front pay in lieu of reinstatement until she obtains new employment with commensurate compensation and benefits;

c.      Economic damages proximately caused by SEH's unlawful termination of her employment;

d.      Nonpecuniary compensatory damages for emotional distress.

e.      An award of reasonable costs and attorney fees incurred in this action, per C.R.S. §§ 24-34-405(4) and 8-2-108(1);

f.      An award of pre-judgment and post-judgment interest;

g.      Such other and further relief as this Court deems just and proper.

h.      **Notice of Intent to Seek Exemplary Damages**. Ms. Gurule's damages were caused by Defendants under circumstances of willful and wanton conduct. At such time as appropriate discovery is obtained, Ms. Gurule will seek to amend this Complaint to request an Order of the Court allowing her to include claims for exemplary damages pursuant to C.R.S. § 13-21-102.


Respectfully submitted this 4th day of December, 2020.

*/s/ Gary M. Kramer*
Gary M. Kramer, #41017
Gary Kramer Law, LLC
1465 Kelly Johnson Blvd, Suite 210
Colorado Springs, CO 80920
Tel: 719-694-2783,  Fax: 719-452-3622
gary@garykramerlaw.com

Attorney for Plaintiff Denise M. Gurule

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of December, 2020, I filed the foregoing COMPLAINT with the Court via the Colorado Courts E-Filing System (CCEFS).

*/s/ Gary M. Kramer*
Gary M. Kramer



DATE FILED: December 4, 2020 8:06 AM
FILING ID: 4C704FB641830
CASE NUMBER: 2020CV30522

EXHIBIT

1



**Todd Starnes** • 3rd+
President at Starnes Media Group
1d • ⊗

The owners of a St. Louis mansion guard their property against an invading horde of Black Lives Matter protesters. Guess which mansion did not get looted in St. Louis?

**Armed St. Louis Couple Defend Mansion Against Black Lives Matter Mob | Todd Starn**
toddstarnes.com • 1 min read

👍❤️😊 48 • 19 Comments

Reactions

+40

👍 Like    💬 Comment    ↪ Share    ✈ Send

Add a comment...  📷

Most Relevant ▾

**Denise Gurule** • 1st                                    1d (edited) •••
Sr. Administrative Assistant at SEH / Notary Public for the State of Colorado

Lock up the BLM's and throw away the key!

👍 | 💬

Add a reply...  📷





Denise Gurule liked Rich Moran's comment on this

· · ·



Mark Houtsma (LION) · 2nd
Owner at bestcoloradohomes.com
1w · 🌐

What in the holy hell has happened to Minnesota! It used to be the land of sky blue waters. Now it's the land of Somali terrorists, retarded politicians and intolerant aholes that want to burn everything down, get rid of the police and have ...see more



❤️ 😮 32 · 19 Comments

👍 Like    💬 Comment    ↪ Share    ✈ Send

Add a comment...    📷

Most Relevant ▼



Rob Tur · 3rd+    1w · · ·
Rescue Boat Operator at LA County Sheriff's Department

Wow that's an oldie! I haven't seen those cans since the late 70's.

👍 5 Likes  |  💬 3 Replies

Load previous replies

Rich Moran · 2nd    1w · · ·
USN/USMC

Hussein Obama and Leftist Governor Dayton brought in 100,000 Somalis which has brought change zero HOPE!!

👍 4 Likes  💬

Load more comments



Denise Gurule likes this

**Peter Nayland Kust** • 3rd+
I convert VoIP and network problems into solutions that benefit your business. I ma...
1w • 

Poor Anthony #Fauci. The tiny twerp is triggered because America no longer believes his BS.

...see more

**Anthony Fauci: Americans 'Don't Believe Science and They Don't Believe Authority'**
breitbart.com • 2 min read

256 · 219 Comments

Like    Comment    Share    Send



**Denise Gurule** commented on this

**Business Insider**
9,279,338 followers
1w · 🌐

+ Follow

Aunt Jemima was fashioned after a "mammy" caricature, a racist depiction that portrays Black female slaves as smiling, happy homemakers for white people.

12 racist brands, mascots, and logos that were considered just
businessinsider.com · 2 min read

37 · 3 Comments

👍 Like    💬 Comment    ↪ Share    ✈ Send

Add a comment...

Most Relevant ▼

Denise Gurule · 1st                                                    1w ...
Sr. Administrative Assistant at SEH / Notary Public for the State of Colorado

I guess I don't see how that's racist! Wow!

👍 | 💬

**Denise Gurule** liked **Edgar Garay's** comment on this



**Juan Lopera** · 2nd
VP, Marketing & RI Medicaid, Tufts Health Public Plans Business Diversity Officer, Tu...
3w · 🌐

Since the portrait of our first African American President will not be unveiled at our White House and it's the first time in 40 years this tradition will be abandoned, I'll proudly post portraits of our 44th President, Barack Obama.          ...see more



😊 👍 ❤️ 5,008 · 190 Comments

👍 Like      💬 Comment      ↪ Share      ✈ Send



Add a comment...                                              📷

Most Relevant ▼



**Edgar Garay** · 3rd+                                          2w ...
Eclectic Value Creator, "Pro sensu communi".

Clown



Denise Gurule likes this

Julio V. • 3rd+
CT Technologist
2w •

If more moms would do this to control those misguided basement dwellers! The riots would not have happened! 👏 Bravo mom +1. Antifa -10 still!





Denise Gurule likes this                    •••



**Annie Rose Inc**
9,075 followers
2w •                          + Follow

#beers #cans #beerindustry #innovation #tools



🌐 🔵 114 • 76 Comments

Denise Gurule
LinkIn profile posts – examples 8/18/20



**Denise Gurule** • 1st
Sr. Administrative Assistant at SEH / Notary Public for the State of Colorado
3h • 🌐

Where is the justice?!

DATE FILED: December 4, 2020 8:06 AM
FILING ID: 4C704FB641830
CASE NUMBER: 2020CV30522

From a US Resident



Hello. Don't recognize me? That's OK; I Understand.  My name was Antonio West. I was the child who was shot in the face and killed at point blank range by two black teens, who were attempting to rob my mother, who was also shot. I think my murder and my mommy's wounding made the news for maybe a day, and then disappeared.

A Grand Jury of my mommy's peers from Brunswick, Georgia ruled the black teens who murdered me will not face the death penalty... too bad it was me who got the death sentence from my killers instead, because Mommy didn't have the money they demanded. See, my family made the mistake of being white in a 73% non-white neighborhood, but my murder wasn't ruled a 'hate crime'.

I'm one of the youngest murder victims in our great Nation's history, but the media didn't care to cover the story of my being killed in cold blood.

There isn't a white equivalent of Al Sharpton, because if there was he would be branded a 'racist'. So no one's rushing to Brunswick, Georgia to demonstrate and demand 'justice' for me. There's no 'White Panther' party, either, to put a bounty on the lives of the two black teens who murdered me.

I have no voice, I have no representation, and unlike those who shot me in the face while I sat innocently in my stroller - I no longer have my life. Isn't this a great country?

So while you're out seeking 'justice for Trayvon', Michael Brown and George, please remember to seek 'justice' for me. Tell your friends about me, tell your families, get tee-shirts with my face on them, and make the world pay attention, just like you did for Trayvon and George.  I won't hold my breath, I don't have to anymore.

Part II:
7/18- Jimmie Norman, white male murdered by black male. No national news.

EXHIBIT

2

exhibitsticker.com

**Denise Gurule**
**LinkIn profile posts – examples 8/18/20**



**Denise Gurule** • 1st                                                                  ▪ ▪ ▪

Sr. Administrative Assistant at SEH / Notary Public for the State of Colorado
3h • ⊙

Where is the justice?!

---

7/18- Terry Taylor, white male murdered by black male. No national news.
7/17- Cindy Raygoza, white female murdered by black male. No national news.
7/11- Luis Aguilar, 91 year old hispanic male murdered by black male. No national
news.
7/10- Brittany Simpson, white female murdered by black male. No national news.
7/6- Sarah Goode, white female murdered by black male. No national news.
7/6- Jeffrey Westerfield, white male murdered by black male. No national news.
7/5- Perry Renn, white male murdered by black male. No national news.
7/3- Laurey Kennedy, white female still in coma from beating by black male. No national
news.
7/3 Eric Mollet, white male murdered by black male. No national news.
7/2 Rupert Anderson, white male murdered by black male. No national news.
7/2 Jennifer Kingeter, white female murdered by black male. No national news.
6/30 Jim Brennan, white male, murdered by black male. No national news.
6/29 Paul Shephard, white male, murdered by black male. No national news.
6/27 Shirley Barone, white female, murdered by black male. No national news.
6/27 Penelope Spencer, white female, murdered by black male. No national news.
6/27 Inga Evans, white female, murdered by black male. No national news.
6/26 Jake Rameau, white male, murdered by black male. No national news.
6/25 Gina Burger, white female, murdered by black male. No national news.
6/24 Nathan Dasher, white male, murdered by black male. No national news.
6/22 Jonathan Price, white male, murdered by black male. No national news.
6/20 John Whitmore, white male, murdered by black male. No national news.
6/18 John Yingling, white male, murdered by black male. No national news.
6/17 Allyn Reeves, white male, murdered by black male. No national news.
6/15 Michael Beaver, white male, murdered by black male. No national news.
6/11 Angela Cook, white female, murdered by black male. No national news.
6/11 Nathan Hall, white male, murdered by black male. No national news.
6/7 Harry Briggs, white male, murdered by black male. No national news.
6/5 Laura Bachman, white female, murdered by black male. No national news.
6/2 Robert Mohler, white male, murdered by black male. No national news.
6/1 William Headley, white male, murdered by black male. No national news.

All this in just 48 days yet no national news. Want to know why?
Because this happens EVERY single day in America and we are used to it.

Yet a THUG getting shot by a Police Officer doing his job, 20 minutes after the THUG
committed a robbery, makes national news! So why is this everyday phenomenal rate of
blacks killing whites, not to mention the far worse rate at which blacks kill each other,
generates riots or is addressed by black leaders as a problem within their community,
but an occasional killing of a black by a white police officer, a black who is usually doing
something dangerously criminal, becomes a riot?

When the statistics speak we see that there is an epidemic of violence coming from
within the black community that seriously endangers the remainder of the population.
So, where is the true injustice and tragedy?

**Denise Gurule**
**LinkIn profile posts – examples 8/18/20**



**Denise Gurule**
**LinkIn profile posts – examples 8/18/20**



**Denise Gurule**

**Linkln profile posts – examples 8/18/20**

Denise Gurule liked Robert E. (Bob) Curran, PMP'S comment on this •••

**Jerry Pappalardo** • 3rd+

17h •

Enquiring minds want to know ? If you are black and you think this Marxist POS represents you then you've been fooled again !! #trump2020 #walkaway

A E • 3rd+

New Business Development: Client Relationship Build-Expand/Client Retention/Ex...

18h •

225 • 123 Comments

Like Comment Share Most Relevant ▾

Add a comment...

**Robert E. (Bob) Curran, PMP** • 3rd+ 18h •••

General Manager at GCR, Inc.

Should have a price on her head, and a place on the FBI's Most Wanted List due to her leadership role in the BLM terrorist organization.

Like • 14 | Reply • 2 Replies

**Jerry Pappalardo** Author 17h •••

You are so correct Bob ! Who dropped the ball ??

Like | Reply

**Robert E. (Bob) Curran, PMP** • 3rd+ 16h •••

General Manager at GCR, Inc.

**Jerry Pappalardo** Jeff Sessions, perhaps?

See translation

Like • 3 | Reply

Load more comments



**Denise Gurule**
**LinkIn profile posts – examples 8/18/20**



Denise Gurule likes this.

The Nashville Tea Party
35,115 followers
2d · 🌐

DATE FILED: December 4, 2020 8:06 AM
FILING ID: 4C704FB641830
CASE NUMBER: 2020CV30522

+ Follow

Had several messages asking where they could get this T-shirt when we posted a picture earlier. Here is a link to one vendor, there are probably many more.



I'd Rather Get Covid-19 Than Biden-20 Shirt
orangestee.com · 1 min read

Denise Gurule likes this

The Nashville Tea Party
35,115 followers
3d · 🌐

+ Follow

The Drug



**EXHIBIT**

**3**





**Denise Gurule** • 2nd
Sr. Administrative Assistant at SEH / Notary Public for the State of Colorado
4h • 🌐





Denise Gurule liked ANTHONY STRACQUALURSI'S comment on this    •••

Renita Hamilton, M.S., B.S. • 3rd+
Independent Business Owner - Mary Kay
20h • ⊗

**Mariah** 🔒
@mariah_bock

I saw a child wearing a 'Trump 2020' mask at school today and I wanted to literally burn him alive

Mariah Bock
Executive Team Lead Human Resources
Greater Minneapolis-St. Paul Area • 500+ connections
Contact Info

North Dakota State University

⊙ ⊙ ⊙ 23 · 69 Comments

👍 Like    💬 Comment    ↪ Share    ◁ Send

Add a comment...    📷

Most Relevant ▼

ANTHONY STRACQUALURSI • 3rd+    1h •••
CURRENTLY SEEKING A NEW POSITION IN SALES. OVER 25 YEARS SALES ...
Goes to show that the left is very mentally unstable!! EVERY ONE OF THEM!!!!

Like - ⊙ 3 | Reply

Load more comments

☐ **FORM 1.2. DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

DATE FILED: December 1, 2020 8:53 AM
FILING ID: F071AC16611D6
CASE NUMBER: 2020CV30522

| | |
|---|---|
| District Court ____Pueblo_____ County, Colorado<br><br>Court Address:<br>501 N. Elizabeth Street<br>Pueblo, CO 81003<br><br>Plaintiff(s): DENISE M. GURULE<br>v.<br>Defendant(s): SHORT ELLIOTT HENDRICKSON INC. | ▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney (Name and Address):<br>Gary Kramer, 1465 Kelly Johnson Blvd, Suite 210, Col. Spgs, CO 80920<br><br>Phone Number: (719) 694-2783      E-mail: gary@garykramerlaw.com<br>FAX Number: (719) 452-3622       Atty. Reg. #: 41017 | Case Number: |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT,
COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT
AND JURY DEMAND**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

   ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

   ☒ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

      By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

   **Or**

☐   Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3.  ☒   This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

**Date:** _12/03/2020_

_____
**Signature of Party or Attorney for Party**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.